UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TRINA BOWIE | * | CIVIL ACTION NO. 20-2441 |
| | * | |
| VERSUS | * | DIVISION: 1 |
| | * | |
| DARNLEY R. HODGE, SR., JERRY | * | MAGISTRATE JUDGE |
| MARTIN, MICHAEL LAUGHLIN, | * | JANIS VAN MEERVELD |
| MARLIN N. GUSMAN | * | |
| | * | |
| ********************************* | * | |

ORDER AND REASONS

Before the Court is the Defendants' Motion to Dismiss. (Rec. Doc. 10). For the following reasons, the Motion is GRANTED in part and DENIED in part.

Background

Trina A. Bowie, a black female, was hired to serve as Director of Human Resources for the Orleans Parish Sheriff's Office ("OPSO") on or about May 7, 2018. Darnley R. Hodge, Sr.— the court appointed compliance director of OPSO—was her direct supervisor. In this lawsuit, Bowie alleges that she experienced sexual harassment and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, the Louisiana Constitution, the Louisiana Employment Discrimination Law ("LEDL"), Louisiana's tort law, and *respondeat superior*.

She alleges that on May 7, 2018, Deputy Lieutenant Jerry Martin made derogatory remarks and whistled at her while she was walking up the steps to the entrance of OPSO on her first day of employment. She says Martin glared at her, said "hey sweetie," and tried to have a conversation with her, referring to her as "baby" and "good looking." Bowie alleges that members of the Human Resources team later told her not to mess with Martin because he was protected by Chief of Investigations, Michael Laughlin. She alleges that Laughlin "was known" to have falsely accused an employee of violating OPSO policy resulting in the employee's termination.

1

The focus of Bowie's sexual harassment allegations concern defendant Hodge. She alleges that he deliberately bumped into her on May 21 and 22, 2018. She alleges that he walked behind her and hit her in the rear. She alleges that he bumped her shoulder to shoulder whenever he had an occasion to stand next to her. Bowie alleges that between June 4, 2018, and December 8, 2018, Hodge physically touched or rubbed her legs, without her consent, under the table in a conference room. She alleges that Hodge said sexually explicit things to her such as that he always slept with his supervisors, that Bowie wanted him, that he was attracted to her, that he wished he met her before the others, and asking her what she liked to do in bed. She alleges that on several occasions Hodge came to her office to rub her shoulders, brush against her breasts with his body and hands, or to say sexually explicit things. Bowie alleges that Hodge would say sorry as if it was an accident. She alleges that she went to dinner with Hodge on occasion to discuss OPSO matters. She alleges that while at Landry's restaurant, he flirted with her and touched her inappropriately. She alleges that on October 9, 2018, after dinner at Santa Fe Restaurant, he tried to kiss her and tried to insert his finger into her vagina while they were sitting in her parked car. Bowie alleges that Hodge told her that he had been with several women who subsequently accused him of sexual harassment, but that each lost their case and that nothing would happen to him.

Bowie also alleges that she experienced reprisal for whistleblower activities in violation of La. Rev. Stat. 23:967 and La. Rev. Stat. § 42:1169. The alleged whistleblower activities appear to be reporting incidents of sexual harassment of other female employees to Hodge and reporting pension abuse and fraud to Hodge. For example, Bowie alleges that during her first week at OPSO, women came to her office to make formal complaints about sexual harassment at OPSO. She says the women primarily contended that male supervisors would make sexually explicit remarks, make unwanted phone calls at their homes, nag or pressure them to have sex with a supervisor, and

inappropriately touch them. And if the women did not comply, they said they would often receive unpleasant assignments or threats of termination. Bowie alleges that when she briefed Hodge about the complaints, he told her to recruit personnel and not to get involved with sexual harassment complaints. She also alleges that she confronted Hodge with an OPSO policy designating her to report sexual harassment. She says Hodge told her to send everything to the Internal Affairs Investigator. Bowie alleges that she "heard" that some women were fired after making formal complaints of sexual harassment incidents. She alleges that she spoke to Sheriff Gusman's attorney, Blake Arcuri, who told her that she would be provided an attorney if she was sued for failure to entertain sexual harassment complaints made by OPSO employees.

With regard to the alleged pension fraud whistleblower activities, Bowie says that Internal Auditor Jane Dimitry informed her that the OPSO civil financial records were a mess. Bowie also alleges that Dimitry told her on February 11, 2019, that retirement checks from the general payroll account were not being deposited directly into the OPSO retirement plan, which was the OPSO pension plan before OPSO joined the LASERS retirement plan and which still has active OPSO employees as members. Bowie alleges that OPSO draws checks to the order of Capital One, NA Trust Operations-Contributions and that the checks are kept in the benefit manager's office. She alleges that interest on money not immediately transferred to the pension account would inure to the benefit of the OPSO's General Fund Account. Bowie alleges that she reported this information to Hodge and his supervisor Margo Frazier. She alleges that Hodge told her not to get involved with the old pension plan.

Bowie's complaint also contains allegations regarding an incident in which she was interviewing applicants for the supervisory position of Chief of Correction and Laughlin told her not to hire a Byron Lecounte, a black candidate from Atlanta, but to hire Rodney R. Taylor, a white

candidate from Texas that he preferred because he believed Taylor could coordinate different groups and teams together. Ultimately Lecounte was hired. Bowie complains that thereafter, Laughlin stopped speaking to her and that his facial expressions "showed anger with her." When she requested formal training to maintain OPSO's compliance with the Louisiana Peace Officer Standards and Training law, she was referred to Laughlin who referred her to a low level subordinate rather than schedule her for the proper training.

She also alleges that when she organized a celebration to honor women employed at the OPSO and invited all staff members to come, Hodge slammed his fists on the table and stated that he would like to know when we are going to celebrate white people. Hodge is a black male.

Bowie further alleges a claim for wrongful termination in violation of Title VII, the Louisiana Constitution, the LEDL, the previously cited whistleblower protection statutes, and Louisiana tort law. She alleges that she was terminated for exposing a pattern and practice of ignoring complaints of supervisors sexually harassing females and failing to investigate claims of abuse and fraud in the former pension system. She alleges that when she did not "go along to get along," Hodge, Martin, Laughlin, and Sheriff Marlin Gusman met secretly to carry out a plan to terminate her or force her to resign. She alleges that on March 13, 2019, she notified Hodge that investigators were found in the Human Resources file room without notifying her or a Human Resources employee. She appears to allege that the individuals removing files were doing so at the direction of Laughlin. She alleges that she learned that Laughlin, with the consent of Hodge, met with a former OPSO Human Resources Director, discussed files with her, and offered her a position.

She also alleges that at a meeting on March 18, 2019, attended by Bowie, Laughlin, and others, Hodge discussed the violations that Bowie had reported to Frazier and stated "there is a

snake at the table and I know who you are." Bowie alleges she felt intimidated. She alleges that on or about March 22, 2019, she made "a formal response" to Hodge's remark, and defendants attempted to force her to resign. She alleges that she sent an email to Frazier informing her of Hodge's remarks and reported that she felt she had become a target of Hodge, Laughlin, and Martin as a result of exposing sexual harassment and corruption. Shortly thereafter she was called to Hodge's office and terminated. She submits that her personnel file did not contain any previous disciplinary actions and that defendants' actions were objectively unreasonable.

Bowie also appears to allege claims for violation of the aforementioned statutes because Hodge prohibited her from investigating alleged sexual harassment of other female employees and investigating the alleged pension fraud. She cites the aforementioned statutes and alleges that Sheriff Gusman has violated them by failing to put in writing and enforce policies and procedures consistent with Title VII and guaranteeing minimum standards and whistleblower protections. She alleges that Laughlin and Hodge failed to enforce such policies. She alleges Sheriff Gusman failed to reasonably supervise or otherwise take action against Martin, Laughlin, and Hodge and that he authorized her retaliatory discharge. She complains that Sheriff Gusman failed to remove Hodge's investigatory authority.

As to defendants Laughlin and Hodge, Bowie asserts a claim for intentional infliction of emotional distress. As to Hodge, she also asserts a claim for civil battery and sexual assault in violation of Title VII, the Louisiana Constitution, the Whistleblower Statute and Civil Code articles 2315 and 2315.

Bowie filed a similar lawsuit in state court on March 6, 2020, which was removed to this court on April 17, 2020. Bowie v. Hodge, No. 2:20-cv-1218, ECF #1 (E.D. La. Apr. 17, 2020). On August 17, 2020, the District Court dismissed Bowie's Title VII claims without prejudice for

failure to exhaust administrative remedies, dismissed her 28 U.S.C. §1983 claims for retaliatory discharge in violation of the First Amendment with prejudice, and dismissed her state law claims without prejudice on the grounds that the court would not exercise its supplemental jurisdiction over such claims. Id. ECF #29 (E.D. La. Aug. 17, 2020).

Following receipt of a right to sue letter from the Equal Employment Opportunity Commission, Bowie filed the present suit on September 8, 2020. The parties have consented to the jurisdiction of the magistrate judge. Trial has not yet been set.

Defendants have filed a Motion to Dismiss. They argue that Bowie fails to state a claim under Title VII because some of the claims she now asserts were not in her EEOC charge and because the remaining allegations are insufficient to state a claim for sexual harassment. They further argue that her claims against Hodge, Laughlin, and Martin under Title VII must be dismissed because these individuals were not her employer. Defendants further argue that to the extent Bowie claims that she was prohibited from investigating sexual harassment and that defendants failed to put policies into place guaranteeing her minimum whistleblower protections, such claims are not cognizable under Title VII. Additionally, defendants argue that Bowie's Title VII claim as to Martin's actions is prescribed.

Defendants argue that Bowie has failed to state a claim under LEDL. First, they argue that all claims except those relating to her termination have prescribed under LEDL. Next, they argue that Bowie's LEDL claims against Hodge, Laughlin, and Martin fail because they were not her employer. Finally they argue that her remaining claims under LEDL fail because she failed to provide written notice to Sheriff Gusman as required by the statute and because her allegations fail to state a claim.

Defendants argue that Bowie fails to state a claim under Louisiana's whistleblower statutes. First, they argue that her claims under §23:967 fail because they have prescribed and because she does not allege that defendants have violated a statute. They also argue that Bowie's claims under that statute fail as to Hodge, Laughlin, and Martin because they were not her employer. They further argue that Bowie's claims under §42:1169 fail because that statute does not allow for a private right of action.

Defendants argue that Bowie fails to state a claim for negligence because such claims have prescribed and because they are barred by the Louisiana Workers' Compensation Statute. They also argue that her claims for intentional torts have prescribed.

Defendants further argue that Sheriff Gusman is not liable under a theory of *respondeat superior* because employers can only be held liable for intentional acts of an employee if they were acting within the ambit of their assigned duties. Defendants argue that any sexual harassment was not within defendants' assigned duties or in furtherance of Gusman's objectives as their employer. They further argue that during the relevant time period, Hodge was acting as the court appointed "Compliance Director" in furtherance of a Consent Judgment in a federal lawsuit by prisoners of Orleans Parish Jail alleging unconstitutional conditions of confinement. Defendants argue that Gusman cannot be held liable under a theory of *respondeat superior* for actions of Hodge because he is not an OPSO employee and is only answerable to the Court.

Bowie opposes the Motion. The Opposition is difficult to follow but mostly presents statements of federal and state law. Infrequently, these statements of law are placed in the context of the facts of this case. Bowie argues that she is entitled to allege claims that are in her EEOC position paper and also those that are reasonably expected to grow out of the charge. She also urges that the court should consider the contents of that position paper, but does not file it in the docket.

She insists that her Complaint establishes a prima facie case of discrimination by OPSO supervisors and argues that Hodge was a direct supervisor. She claims a conspiracy and plan was created by Hodge, Laughlin, and Martin to force her to resign or fire her. She argues that Hodge, Laughlin, and Martin are not required to be her employers to be liable under Title VII.

Law and Analysis

1. *Standard for Motion to Dismiss*

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks and ellipsis omitted). Accordingly, Rule 12(b)(6) allows a defendant to move for expeditious dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on a 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). Further, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level." Id. (citation, footnote, and quotation marks omitted). On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

2. *Causes of Action Raised in Plaintiff's Complaint*

    a. *Title VII*

        i. *Failure to Exhaust Administrative Remedies*

"It is well-settled that courts have no jurisdiction to consider Title VII claims as to which the aggrieved party has not exhausted administrative remedies." Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex., 40 F.3d 698, 711 (5th Cir. 1994). Thus, "[t]he scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Carey v. State of Louisiana, No. CIV.A. 00-2657, 2001 WL 1548962, at *5 (E.D. La. Dec. 5, 2001) (quoting Thomas v. Texas Dep't of Criminal Justice, 220 F.3d 389, 395 (5th Cir. 2000)). In light of the remedial purposes underlying Title VII, courts "construe employment discrimination charges with the 'utmost liberality,' bearing in mind that such charges are generally prepared by laymen untutored in the rules of pleading." Price v. Sw. Bell Tel. Co., 687 F.2d 74, 78 (5th Cir. 1982).

Here, Bowie's EEOC charge checks the boxes for discrimination based on race, sex, retaliation, and age. In the "particulars," she alleges that she experienced sexual harassment and that she attempted to investigate others' claims of sexual harassment. She refers to Hodge's alleged statement, "When are we going to celebrate White people?" in response to the Women's Day celebration she organized. She refers to her discharge on May 7, 2019. She lists examples of sexual harassment, including the alleged cat-calling by Martin on her first day, that deputies were talking about what type of "sexy" underwear she was wearing, and that Hodge brushed his body against hers weekly.

Defendants argue that the allegations in her Complaint go far beyond these claims. They point out that Bowie's EEOC charge does not mention Laughlin or any of the allegations regarding him at all. She does not allege that Hodge said sexually explicit things to her, touched her inappropriately at dinner, or told her not to get involved with employees reporting sexual harassment. She does not allege that defendants attended secret meetings to carry out a plan to terminate her or force her to resign.

Bowie argues that it is not appropriate for the court to consider her EEOC charge at this stage because she did not attach it to her Complaint and because it is incomplete. She argues that if the EEOC charge is considered, so too should the position statement that she refers to in her Complaint. She adds that the defendants also filed a position paper with the EEOC investigator. She further says that the EEOC intake investigator did not complete typing her entire narrative in the "particulars" section of her EEOC charge. She points out that the narrative ends "I believe an entire class of Females were discriminated against in violation of Title VII of the 1965 Civil Rights Act, as amended, and based on my age, 52 years, in violation of the Age Discrimination in Employment Act, as amended, in that." She argues that this incomplete sentence ending "in that" shows that she had more details to allege. Bowie argues that the exhaustion requirement must be construed liberally.

On the record before it, the court cannot determine whether Bowie exhausted her administrative remedies on all the claims made in her Complaint. As the defendants point out, the Complaint contains numerous allegations that are not raised in the EEOC charge. At least some of these new allegations seem to extend beyond the scope of the particulars alleged in the EEOC charge. But, the narrative statement in the EEOC charge cuts off, suggesting that additional information may have been inadvertently excluded by the EEOC staff member drafting the form.

There might be a contemporaneously created EEOC intake questionnaire that reflects the details that were left out of the narrative statement. But the court has not been presented with a copy. Bowie asserts that she filed a position statement that fully described her claims. But she has not presented that statement to the court.[1] Nor does the court have the defendants' position statement, which could also reflect what claims were raised by the EEOC charge and any resulting investigation.

In light of the requirement that this court construe Bowie's EEOC charge liberally, the court is not now prepared to conclude that the new allegations could not have grown out of an EEOC investigation. Defendants will be allowed to reurge this argument at a later time if there is additional documentation to support their position.

### ii. *Failure to State a Claim for Sexual Harassment*

To establish a claim for sexual harassment under Title VII, the plaintiff must show that the harassment created a hostile work environment. Harvill v. Westward Commc'ns, L.L.C., 433 F.3d 428, 434 (5th Cir. 2005). Four elements are required to establish a hostile-work-environment claim: "(1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on [a protected characteristic]; and (4) that the harassment affected a 'term, condition, or privilege' of employment." E.E.O.C. v. Boh Bros. Const. Co., 731 F.3d 444, 453 (5th Cir. 2013) (quoting Lauderdale v. Texas Dep't of Criminal Justice, Institutional Div., 512 F.3d 157, 162–63 (5th Cir. 2007)). Harassment affects a "term, condition, or privilege" of employment when it is so severe or pervasive that it alters the conditions of employment and "create[s] an abusive working environment." Meritor Sav. Bank,

---

[1] Bowie seems to suggest that the defendants should have filed this into the record. But defendants say they never received Bowie's position statement. Presumably Bowie has a copy of her position statement. Alternatively, it may be possible to obtain this record from the EEOC.

FSB v. Vinson, 477 U.S. 57, 67 (1986) (quoting Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982)). In determining "whether a hostile work environment existed, a court must consider 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Moore v. United Parcel Serv., Inc., 150 F. App'x 315, 319 (5th Cir. 2005) (quoting Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002)). An isolated offensive utterance is not sufficient to demonstrate a hostile work environment due to a protected characteristic. Weller v. Citation Oil & Gas Corp., 84 F.3d 191, 194 (5th Cir. 1996) (quoting DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 595 (5th Cir. 1995)) ("[T]he 'mere utterance of an . . . epithet which engenders offensive feelings in an employee' is insufficient, without more, to support Title VII liability."); see Long v. Eastfield Coll., 88 F.3d 300, 309 (5th Cir. 1996) (holding that an offensive joke concerning condoms told in the plaintiff's presence was insufficient to establish a hostile work environment claim on the basis of sex); Martin v. Winn–Dixie Louisiana, Inc., 132 F. Supp. 3d 794, 822–23 (M.D. La. 2015) (holding that plaintiff could not survive summary judgment when her harassment claims were based on two stray remarks: being offered candy though she was a diabetic and being told that she could not do her job and be pregnant); Jones v. Cont'l Cuisine, Inc., 353 F. Supp. 2d 716, 720–21 (E.D. La. 2004) (finding the plaintiff had not established a  race based hostile work environment where the only evidence to support a racially hostile work environment was a manager's alleged use of the "n word" during one meeting).  A hostile work environment must be found to "be both objectively and subjectively offensive." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998).  And as defendants here point out,  Title VII is not a "general civility code." Faragher, 524 U.S. at 788 (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)) (explaining that the elements of a hostile

work environment claim "are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'").

Focusing only on the sexual harassment allegations in Bowie's EEOC charge, defendants argue that her allegations are insufficient to establish a hostile work environment. As discussed above, all the allegations in Bowie's Complaint remain live at this time. These include allegations that Hodge touched or rubbed her legs, said sexually explicit things, repeatedly brushed against her breasts with his body and hands, and that on two occasions he touched her inappropriately during or following dinner, including trying to kiss her and insert his fingers into her vagina. She also alleges that Hodge instructed her not to get involved in the sexual harassment complaints of others. At this stage, the court finds these allegations sufficient to state a claim for a hostile work environment on account of sex. She alleges far more than the occasional boorish comment or offensive utterance.

### iii. Direct Claims against Hodge, Laughlin, and Martin

"[R]elief under Title VII is only available against an employer, not an individual supervisor or fellow employee." Umoren v. Plano Indep. Sch. Dist., 457 F. App'x 422, 425 (5th Cir. 2012) (quoting Foley v. Univ. of Houston Sys., 355 F.3d 333, 340 (5th Cir. 2003)). "The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . ." 42 U.S.C. § 2000e(b). The Fifth Circuit has explained that:

> While Title VII defines the term employer to include 'any agent' of an employer, this circuit does not interpret the statute as imposing individual liability for such a claim. Congress's purpose in extending the definition of an employer to encompass an agent in Section 2000e(b) was simply to incorporate *respondeat superior* liability into Title VII. Thus, a Title VII suit against an employee is actually a suit against the corporation.

13

Indest v. Freeman Decorating, Inc., 164 F.3d 258, 262 (5th Cir. 1999) (citations and footnote omitted).

Defendants argue that Martin and Laughlin are employees of Sheriff Gusman and cannot be considered employers under Title VII. They argue that Hodge was not Bowie's employer either. They insist that Sheriff Gusman was Bowie's employer and he is the appropriate party for her Title VII claims.

In opposition, Bowie argues that because the definition of "employer" includes any agent of the employer, Hodge, Martin, and Laughlin are individually liable under Title VII. Bowie also argues that her claims against Hodge, Martin, and Laughlin as individuals are cognizable as 42 U.S.C. § 1983 claims for violation of the Fourteenth Amendment.

The court concludes that as to Bowie's Title VII claims against Hodge, Martin, and Laughlin, she cannot state a claim. The Fifth Circuit has concluded that only the employer, and not the employees individually, can be held liable under Title VII. Thus, Bowie's Title VII claims against Hodge, Martin, and Laughlin must be dismissed.

The court further finds that Bowie has not alleged a § 1983 claim in her present Complaint and the court will not now consider the viability of an unplead claim. Whether any of Bowie's other claims against Hodge, Martin, Laughlin can survive this motion to dismiss will be addressed below.

        iv.     *Claims Regarding Enforcement of Title VII or Whistleblower Policies*

Title VII provides that the following actions by an employer are unlawful:

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

Defendants argue that Bowie's claim that Sheriff Gusman failed to put into writing or failed to enforce policies and procedures consistent with Title VII[2] is not a cause of action under Title VII. Similarly, they argue that Title VII does not require the defendants to put into writing or enforce policies to guarantee minimum standards and whistleblower protection procedures.[3] They further argue that Bowie's claim that the Sheriff failed to remove Hodge's discretionary authority to investigate Title VII complaints filed by OPSO employees[4] is not actionable under Title VII.

Plaintiff does not address Defendants' arguments regarding these purported Title VII claims in her opposition.

The court agrees with defendants that Title VII does not require or prohibit such actions and these actions do not, on their own, give rise to a cause of action under Title VII. Further, the court finds defendants' motion to dismiss unopposed on this point. Accordingly, the claims of violation of Title VII by failing to issue or enforce policies or remove Hodge's investigatory authority must be dismissed.

> ### v.   *Timeliness of Claims Regarding Martin's Behavior*

"A plaintiff's Title VII claims based on events that occurred more than 300 days before [she] filed [her] EEOC charge are time-barred." O'Neal v. Cargill, Inc., 178 F. Supp. 3d 408, 418 (E.D. La. 2016). But hostile work environment claims are subject to the continuing violation doctrine. Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll., 850 F.3d 731, 737 (5th

---

[2] See Complaint, Rec. Doc. 1, ¶105(1).
[3] See id. at ¶105(6).
[4] See id. at ¶105(5).

Cir. 2017), as revised (Mar. 13, 2017). "As long as 'an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'" Id.  (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002).

Defendants argue that Bowie's Title VII claim arising out of Martin's behavior on her first day at work is barred because her first day of work was more than 300 days before she filed a charge with the EEOC. Bowie counters that the continuing violation doctrine applies. Defendants respond that the allegation against Martin should be considered a separate action for purposes of determining whether the continuing violation doctrine applies because it was a singular incident allegedly perpetrated by a non-supervisor while all other incidents alleged in the complaint allege a different actor.

The court has already ruled that Bowie's claims for individual liability of Martin under Title VII must be dismissed. To the extent Bowie claims that the alleged incident involving Martin on her first day of work is part of her hostile work environment claim, the court will not strike the allegation from her Complaint at this time.

      b.  *LEDL*

          i.  *Prescription*

Claims under the LEDL are subject to a one-year prescriptive period that "commences to run from the day injury or damage is sustained." Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agric. & Mech. Coll., 55 F. Supp. 3d 864, 874 (M.D. La. 2014), aff'd sub nom. Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll., 620 F. App'x 215 (5th Cir. 2015) (quoting King v. Phelps Dunbar, L.L.P., 98-1805 (La. 6/4/99), 743 So. 2d 181, 187); see La. Rev. Stat. §23:303(D). This one year period is "suspended during the pendency of any administrative review

or investigation of the claim conducted by the federal Equal Employment Opportunity Commission or the Louisiana Commission on Human Rights," provided that no such suspension "shall last longer than six months." La. Rev. Stat. §23:303(D).

Defendants argue that Bowie's LEDL claims, except for her claim of wrongful termination, are prescribed. Bowie filed her complaint on September 8, 2020. One year before this was September 8, 2019. Another six months before that, to account for the period of suspension resulting from the filing of an EEOC charge, was March 8, 2019. Bowie was terminated on March 22, 2019. Defendants submit that many of the allegations in the Complaint refer to conduct occurring well before that: derogatory sexual remarks by Martin on May 7, 2018, Hodge deliberately bumped into Bowie on May 21 and 22, 2018, Hodge physically touched or rubbed her legs between June 4 and December 8, 2018, and the encounter between Hodge and Bowie at Santa Fe Restaurant on October 9, 2018. As to the allegations without a specific date, defendants argue that most of those allegations (except for her termination) must have occurred prior to March 8, 2019.

Bowie does not explicitly address timeliness of her claims under the LEDL in opposition. She does point out that investigators were found in the Human Resources file room on March 13, 2019, as part of the plan to terminate her. The meeting when she alleges Hodge referred to her as a snake at the table occurred on March 18, 2019. She alleges she made a written response to Hodge's remarks on March 22, 2019.

The court finds that the post March 8, 2019 events identified by Bowie appear to be related to her unlawful termination claim. Defendants concede that this claim is timely under the LEDL. As to Bowie's claims under the LEDL arising out of earlier conduct, however, the court finds that they must be dismissed as prescribed.

ii.   *Direct Claims against Hodge, Laughlin, and Martin*

An individual is not typically considered an "employer" under the LEDL, which defines employer as  one "receiving services from an employee and, in return, giving compensation of any kind to an employee."  <u>Farmer v. Mouton</u>, No. CV 16-16459, 2017 WL 1837812, at *9 (E.D. La. May 8, 2017) (quoting La Rev. Stat. §23:302(2)).

Defendants argue that Bowie cannot state a claim against Hodge, Laughlin, or Martin under the LEDL because she has not alleged that they paid her wages or had any employees. Bowie does not specifically respond to defendants' argument in her opposition memorandum.

The court agrees with the defendants and finds that Bowie cannot state a claim against Hodge, Laughlin, and Martin under the LEDL because they are not employers under the LEDL. Her LEDL claims against these defendants must be dismissed.

iii.   *Exhaustion of Administrative Remedies*

"Prior to filing a lawsuit under the Louisiana anti-discrimination statute, a plaintiff must give the proposed defendant written notice that she believes she has been discriminated against at least 30 days before initiating court action." <u>Johnson v. Hosp. Corp. of Am.</u>, 767 F. Supp. 2d 678, 700 (W.D. La. 2011); <u>see</u> La. Rev. Stat. §23:303(C). "[T]he filing of an EEOC charge of discrimination satisfies this notice requirement," but only as to the discrimination alleged in the EEOC charge. <u>Johnson v</u>, 767 F. Supp. at 700.

For the same reasons as discussed above, the court finds that on the present record, it is not possible to determine whether Bowie has exhausted her administrative remedies.

c. *Louisiana's Whistleblower Statutes*

i. *Timelines of Claim under La. Rev. Stat. § 23:967*

Louisiana's whistleblower protection statute, La Rev. Stat. § 23:967 does not specifically set out a prescriptive period so the general one-year prescriptive period for delictual actions applies. Langley v. Pinkerton's Inc., 220 F. Supp. 2d 575, 581 (M.D. La. 2002).

Defendants argue that Bowie's whistleblower claims under §23:967 have prescribed. She filed suit on September 8, 2020. One year before that was September 8, 2019. She was terminated from employment on March 22, 2019.

Bowie does not address this argument in her opposition.

The court finds that Bowie's claims under La. Rev. Stat. § 23:967 must be dismissed as prescribed because all actions complained of occurred more than one year prior to the time she filed suit.[5]

ii. *Claims under La. Rev. Stat. § 42:1169*

Louisiana Revised Statute §42:1169 provides:

Any public employee who reports to a person or entity of competent authority or jurisdiction information which he reasonably believes indicates a violation of any law or of any order, rule, or regulation issued in accordance with law or any other alleged acts of impropriety related to the scope or duties of public employment or public office within any branch of state government or any political subdivision shall be free from discipline, reprisal, or threats of discipline or reprisal by the public employer for reporting such acts of alleged impropriety

---

[5] Because Bowie's claims under La Rev. Stat. § 23:967 have prescribed, the court does not address defendants' alternative argument that she has failed to state a claim under this statute because she has not alleged that defendants violated a state statute. See Hale v. Touro Infirmary, 2004-0003 (La. App. 4 Cir. 11/3/04), 886 So. 2d 1210, 1215, writ denied, 2005-0103 (La. 3/24/05), 896 So. 2d 1036 (concluding that "[o]n its face, the Whistleblower Statute supports actions by plaintiffs who are aware of a workplace practice or act in which a violation of law actually occurred.").Nor does the court address their alternative argument that Bowie cannot state a claim against Hodge, Martin, and Laughlin under that statute because they were not her employers. White v. Slaughter, No. CV 17-1022, 2017 WL 6507699, at *6 (W.D. La. Nov. 15, 2017), report and recommendation adopted, No. CV 17-1022, 2017 WL 6503995 (W.D. La. Dec. 19, 2017) ("[C]ourts have recognized that because a supervisor is neither an employer in the traditional sense, nor an employer under the LEDL, a supervisor is not an employer under the Louisiana Whistleblower Act.")

La. Rev. Stat. § 42:1169(A). "An employee's remedy under the Code of Governmental Ethics is through the Board of Ethics." <u>Collins v. State ex rel. Dep't of Nat. Res.</u>, 2012-1031 (La. App. 1 Cir. 5/30/13), 118 So. 3d 43, 47); <u>see</u> La. Rev. Stat. § 42:1169(B)(1)(a). Section 42:1169 "does not provide an independent right of action, rather, it relies upon other statutes to provide a right of action." <u>Collins v</u>, 2012-1031 (La. App. 1 Cir. 5/30/13), 118 So. 3d 43, 48.

Bowie appears to invoke §42:1169 as a basis for a cause of action against the defendants. Defendants argue that such claims must be dismissed because there is no private right of action under §42:1169. Plaintiff does not address this argument.

The court finds that Bowie's claims against the defendants under Louisiana Revised Statute §42:1169 must be dismissed because there is no independent cause of action under that statute.

> d. *Negligence*

The Louisiana Civil Code provides that "Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained." La. Civ. Code. art. 3492.

Bowie alleges causes of action under Louisiana Civil Code articles 2315, 2316, and 2320. Article 2315(A) provides "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Article 2316 provides "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill." Article 2320 provides for vicarious liability of employers for damage caused by their employees "in the exercise of the functions in which they are employed. These articles establish delictual actions governed by the prescriptive period of article 3492.

Defendants argue that Bowie's negligence claims under articles 2315, 2316, and 2320 have prescribed because all of the events alleged in her complaint occurred more than one year before suit was filed on September 8, 2020. Bowie does not respond to this argument in her opposition.

The court finds that Bowie's negligence claims under articles 2315, 2316, and 2320 have prescribed because every injury alleged in her complaint occurred before September 8, 2019. Accordingly, these claims must be dismissed.[6]

### e. *Intentional Torts*

Bowie also asserts claims for intentional torts against Hodge, Laughlin, and Martin. Defendants argue these claims are also prescribed under Louisiana Civil Code article 3492. Bowie does not respond to this argument in her opposition memorandum.

The court agrees that Bowie's claims for intentional torts[7] are also prescribed under article 3492 because all the injuries complained of occurred more than one year before she filed suit.[8]

### 3. *Qualified Immunity*

Because there are no remaining claims against Martin and Laughlin in their individual capacities, the court does not address defendants' argument that any such actions are barred by qualified immunity.

---

[6] Because the court finds Bowie's negligence claims have prescribed, the court does not address her alternative and unopposed argument that her negligence claims are barred by the Louisiana Workers' Compensation Statute. See La. Rev. Stat. § 23:1032; Bertaut v. Folger Coffee Co., No. CIVA 06-2437 GTP, 2006 WL 2513175, at *3 (E.D. La. Aug. 29, 2006) (dismissing plaintiff's claims against her employer for negligent infliction of emotional distress, failure to train and failure to supervise as barred by the Louisiana Worker Compensation Statute because plaintiff alleged that the conduct occurred in the course and scope of employment).

[7] Bowie alleges intentional infliction of emotional distress, assault, and battery.

[8] Defendants also argue that Sheriff Gusman cannot be held liable under a theory of *respondeat superior* for the intentional torts of his employees. Because the court has found Bowie's intentional tort claims prescribed, the court does not consider this argument. The court also declines to address defendants' argument that the Sheriff cannot be held liable under a theory of *respondeat superior* for any of the actions of Hodge because the Sheriff was not Hodge's employer. Bowie's tort claims have been dismissed as prescribed so there is no need to consider this argument.

21

Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. The following claims are hereby dismissed:

- Title VII and LEDL claims against Martin, Laughlin, and Hodge.

- All remaining LEDL claims except for unlawful termination.

- Title VII claims for failing to issue or enforce policies or remove Hodge's investigatory authority.

- All whistleblower claims.

- All negligence claims under articles 2315, 2316, and 2320.

- All intentional tort claims.

The remaining claims are Bowie's Title VII claims for sexual harassment and retaliatory termination against the Sheriff and her LEDL claim against the Sheriff for retaliatory termination.

New Orleans, Louisiana, this 6th day of January, 2021.

Janis van Meerveld
United States Magistrate Judge