UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TRINA A. BOWIE | * | CIVIL ACTION NO. 20-2441 |
| | * | |
| VERSUS | * | SECTION: "B"(1) |
| | * | |
| DARNLEY R. HODGE, SR., ET AL. | * | JUDGE IVAN L. R. LEMELLE |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************ | * | |

ORDER AND REASONS

This is an employment discrimination lawsuit in which the plaintiff alleges that she suffered unlawful sexual harassment, a hostile work environment, and retaliatory termination. Her employer has filed a Motion for Summary Judgment. (Rec. Doc. 41). The Motion is hereby GRANTED in part and DENIED in part. Because plaintiff has failed to show that she timely engaged in a protected activity, if at all, her claim for retaliation must be dismissed. Her claim arising out of the alleged sexual harassment by a co-worker in her first week of work must be dismissed because this claim was not timely filed and the continuing violation doctrine is not applicable where, as here, the earlier incident is unrelated to the later, timely asserted claims of harassment. However, as to plaintiff's claim for sexual harassment by her supervisor, the court finds that she has exhausted her administrative remedies, even as to the additional facts alleged in her complaint but not in her charge of discrimination with the Equal Employment Opportunity Commission. Considering the entirety of the alleged incidents, material issues of fact preclude summary judgment as to plaintiff's sexual harassment and hostile work environment claim involving her supervisor. This claim shall proceed to trial.

1

Background

Trina A. Bowie, a black female, was hired to serve as Director of Human Resources for the Orleans Parish Sheriff's Office ("OPSO") on or about May 7, 2018. Darnley R. Hodge, Sr.—the court appointed compliance director of OPSO—was her direct supervisor. In this lawsuit, Bowie alleges that she experienced sexual harassment and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 and retaliatory termination in violation of Title VII and the Louisiana Employment Discrimination Law ("LEDL").

Although the majority of Bowie's sexual harassment allegations concern conduct by Hodge, Bowie also alleged sexual harassment by Deputy Lieutenant Jerry Martin. In her deposition, she testified that on her first day or in her first week at work, Martin looked her up and down in a disrespectful and sexual way and catcalled her.[1] He said, "Hey baby, you know, you look so nice. Would you like to go out?"[2]

Bowie testified that around her second month of working at OPSO, she was walking down a corridor with Hodge when he bumped her from the side and his hand hit her breasts and the side of her backside.[3] The hair on the back of her neck stood up and she looked at him, but neither of them said anything.[4] Something internally told her it was not an accident.[5]

Bowie testified that about three weeks later while sitting in a chair in her office having a conversation, Hodge got up, walked around her desk, and started massaging the back of her neck.[6] She hunched her shoulders to indicate he should not do that kind of thing.[7] He touched the side of

---

[1] Bowie Depo. Tr., Rec. Doc. 41-10, at 169.
[2] Id.
[3] Id. at 72.
[4] Id. at 72-73.
[5] Id. at 73.
[6] Id. at 74.
[7] Id.

2

her breast, and she pushed his hand and said, "don't do that."[8] She testified that he responded, "oh, I'm sorry."[9]

Bowie also testified that Hodge would sporadically put his hand on her thigh if he was sitting next to her during a meeting.[10] She said that they would have conversations about that, and he would say he would not do it again.[11]

Bowie testified that once after they had dinner at Santa Fe Restaurant to discuss business, he knocked on her car window when they were leaving and sat down in her car.[12] She testified that he put his fingers into her and tried to kiss her.[13] Hodge denied ever inappropriately touching Bowie's private parts.[14]

Bowie testified that closer to the time of her termination, Hodge came into her office and asked her take off her blouse in front of a window.[15] The window looked out over a roof that had an OPSO camera on it.[16] She asked him if he was crazy because of the camera outside of the window, but he kept trying and eventually demanded that she take off her blouse.[17] She testified that he ultimately made her unbutton her blouse closer to the door than to the window.[18] She explained that she thinks he unbuttoned the top two buttons and told her to unbutton the rest.[19] She thinks she unbuttoned two buttons and then he left.[20] She said she complied with the request because she was scared; she thought his behavior had been shifting and had become more

---

[8] Id.
[9] Id.
[10] Id. at 75.
[11] Id.
[12] Id. at 75-76.
[13] Id. at 76.
[14] Hodge Depo. Tr., Rec. Doc. 41-5, at 45.
[15] Bowie Depo Tr., Rec. Doc. 41-10, at 84-86.
[16] Id. at 86.
[17] Id.
[18] Id. at 87.
[19] Id. at 87-88
[20] Id. 8

3

threatening and that her job depended on it.[21] Looking back and knowing that she was under investigation at that time, she believes that Hodge was trying to get her to do this in front of the window because he knew he had been sexually harassing her and knew the case was coming.[22]

Bowie testified that sporadically Hodge would say he wanted to make love to her.[23] She also testified that he would sometimes show her sexually suggestive pictures or videos on a phone or tablet in his office.[24] The pictures would be of women's breasts and once there was a picture of a woman who was bent over with no underwear on and a video of a woman walking naked through the airport.[25]

Bowie testified that she did not report the sexual harassment by Hodge to anyone at OPSO.[26] She did not feel safe.[27]

Meanwhile, in early 2019, HR Investigator Earl Fox contacted Chief of Investigations Michael Laughlin and expressed concerns about one of the other HR Investigators, Steven Odom, regarding hiring practices.[28] Odom was alleged to have used his position as a background investigator with OPSO to talk to potential hires, develop relationships with them, and possibly trade those relationships for a hire.[29] During the investigation, Fox alleged that some applicants that Odom had involvement with were hired when they should not have been.[30] For example, one had a history of traffic arrests that should have disqualified her but she was hired anyway.[31] In Odom's interview, he stated that people had been hired before their background checks were

---

[21] Id. at 88.
[22] Id. 87.
[23] Id. at 180.
[24] Id. at 222.
[25] Id.
[26] Id. at 92.
[27] Id.
[28] Laughlin Depo. Tr., Rec. Doc. 41-14, at 12.
[29] Id.
[30] Fox Interview Tr., Rec. Doc. 41-17, at 24-25.
[31] Id.

complete or before the summary of their background check was completed via a conditional job offer.[32]

Bowie was also interviewed as part of the investigation. She was asked about numerous applicant folders, including one showing an applicant had an arrest, another where the applicant had tested positive for marijuana, and another where the applicant admitted to having used and sold drugs, but Bowie had not signed off on the folders.[33] She was asked, "[h]ow was the files we went over, how did that happen? If you're the HR director, how did that happen?"[34] It was suggested that maybe she "put a little too much faith in Odom," and she agreed.[35] She was asked again, if her signature is not on a folder, "how does that really happen? Does the file not come to you? Or are you just overwhelmed and you put the trust in other people if you think they're doing it and they're failing, and it's just getting by you?"[36] She responded "All of the above."[37] She was told that the investigators were concerned about "people coming on this job that admit to selling drugs on the street" and that:

> At some point, what happens is, if you're the general like DeNoux says, people who are selling dope should not make it here. And more importantly, investigators that we hire can make this a better place. This hiring garbage? It shouldn't happen. People die in here because of dope that's coming from staff. And I think it's important for you to stay on top of this and look through everything so this doesn't happen in the future.[38]

Bowie responded, "I fully understand and take responsibility for that."[39]

---

[32] Odom Interview Tr., Rec. Doc. 41-17, at 55. It is Bowie's position that she was authorized to make conditional offers of employment.
[33] Bowie Interview Tr., Rec. Doc. 41-17, at 79-84. The video file of Bowie's interview was apparently corrupted and lost, but Laughlin has declared that the transcript is a true and correct copy. Laughlin Decl., Rec. Doc. 41-17, at 2.
[34] Bowie Interview Tr., Rec. Doc. 41-17, at 100.
[35] Id.
[36] Id.
[37] Id.
[38] Id. at 102.
[39] Id.

A report of the investigation was prepared and Laughlin summarized the findings for Hodge.[40] Hodge asked Laughlin what his options were for disciplining Bowie, and Laughlin advised that a Disciplinary Review Board or Chief's Hearing could be convened.[41] A Chief's Hearing was convened and the board members met on March 18 and 19, 2019, to consider the evidence against Bowie and if necessary, to recommend discipline.[42] Bowie did not participate in the hearing. The board unanimously recommended the termination of Bowie's employment, and Laughlin summarized the findings of the investigation and the board's recommendation in a letter to Hodge on March 20, 2019.[43] Hodge informed Laughlin on the morning of March 22, 2019, that he had accepted the board's recommendation and wanted to proceed with the termination of Bowie.

On March 22, 2019, around 9:00 or 9:30 a.m., Hodge's secretary asked Bowie to report for a meeting with Hodge and Laughlin.[44] Hodge and Laughlin waited in the conference room for about 20-30 minutes for Bowie to arrive.[45] Hodge gave Bowie an opportunity to resign, but when she refused, Laughlin handed her a pre-written letter notifying her of her termination and informed her that she was being terminated.[46]

That same morning, Bowie sent Hodge an email with concerns.[47] The read receipt indicates the email was sent at 9:33 a.m. and was received by Hodge at 11:22 a.m.[48] Bowie could not

---

[40] Laughlin Decl., Rec. Doc. 41-17, at 2.
[41] Id.
[42] Id. at 3.
[43] Id. at 4.
[44] Id.
[45] Id.
[46] Id.; Bowie Depo Tr., Rec. Doc. 41-10, at 251-52.
[47] Rec. Doc. 41-13, at 18.
[48] Id. at 24.

6

remember whether she sent the email before or after the meeting where she received notice of her termination.[49]

Following her termination from OPSO, Bowie filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). She checked the boxes for discrimination based on race, sex, age, and retaliation.[50] As examples of sexual harassment she experienced, she alleged that she was catcalled by Martin on his first day of employment, that she learned during her first week of work "talk was being made" by deputies about what kind of underwear she might be wearing, and that Hodge brushed his body against hers if she was seated and/or walking on a weekly basis.[51] In a lengthy position statement submitted by her counsel to the EEOC while the matter was still under investigation, but never shared with the Sheriff, she alleged more specific examples of sexual harassment by Hodge, including that he would touch or rub her legs under the table during meetings, that he said sexually explicit things to her, that he would try to rub her shoulders, that he flirted with her at Landry's and eventually touched her inappropriately without her consent, and that after dinner at Santa Fe Restaurant, he tried to kiss her, stuck his tongue into her mouth, and tried to insert his fingers into her vagina, all without her consent. She did not file an amended EEOC Charge.

Bowie received a Notice of Right to Sue from the EEOC and filed this lawsuit on September 8, 2020 against Hodge, Martin, Laughlin, and Sheriff Marlin N. Gusman. The parties consented to proceed before the magistrate judge and the matter was referred to the undersigned. Defendants filed a motion to dismiss and the court dismissed all claims except Bowie's Title VII claims for sexual harassment and retaliatory termination against the Sheriff and her LEDL claim

---

[49] Bowie Depo. Tr., Rec. Doc. 41-10, at 253-53.
[50] Rec. Doc. 41-13, at 25.
[51] Id.

against the Sheriff for retaliatory termination. The case is set for a bench trial on February 14, 2022. The Sheriff has moved for summary judgment on all of Bowie's remaining claims.

Law and Analysis

1. *Summary Judgment Standard*

Summary Judgment under Federal Rule of Civil Procedure 56 must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56. The movant has the initial burden of "showing the absence of a genuine issue as to any material fact." Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). The respondent must then "produce evidence or designate specific facts showing the existence of a genuine issue for trial." Engstrom v. First Nat. Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995). Evidence that is "merely colorable" or "is not significantly probative" is not sufficient to defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

"An issue is material if its resolution could affect the outcome of the action." Daniels v. City of Arlington, Tex., 246 F.3d 500, 502 (5th Cir. 2001). Thus, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Although this Court must "resolve factual controversies in favor of the nonmoving party," it must only do "where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013) (quoting Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Court must not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

2. *Timeliness of Sexual Harassment Claim Related to Martin's Behavior*

"A plaintiff's Title VII claims based on events that occurred more than 300 days before [she] filed [her] EEOC charge are time-barred." O'Neal v. Cargill, Inc., 178 F. Supp. 3d 408, 418 (E.D. La. 2016). But hostile work environment claims are subject to the continuing violation doctrine. Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll., 850 F.3d 731, 737 (5th Cir. 2017), as revised (Mar. 13, 2017). "As long as 'an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'" Id. (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002). However, "the plaintiff must demonstrate that the 'separate acts' are related, or else there is no single violation that encompasses the earlier acts." Stewart v. Mississippi Transp. Comm'n, 586 F.3d 321, 328 (5th Cir. 2009). In Stewart, for example, the Fifth Circuit found that the timely 2006 acts were sufficiently related to the 2003-04 acts to constitute a single practice where "the pre–and post-limitations period incidents involved the same type of harassment and were perpetrated by the same manager." Id. at 329. Additionally, "the violation must be continuing; intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it, precluding liability for preceding acts outside the filing window." Id. Finally, the Fifth Circuit has recognized that "the continuing violation doctrine is tempered by the court's equitable powers, which must be exercised to 'honor Title VII's remedial purpose without negating the particular purpose of the filing requirement.'" Id. (quoting Morgan, 536 U.S. at 121).

Here, there is no dispute that the incident involving Martin occurred more than 300 days before Bowie filed her EEOC Charge.[52] The Sheriff argues that the continuing violation doctrine is inapplicable because Martin's single instance of catcalling Bowie is unrelated to the later harassment allegedly committed by Hodge. He points out that unlike Hodge, Martin was not Bowie's supervisor.

Bowie does not address the Sheriff's argument legally or factually. Her opposition memorandum recalls her allegation that Martin glared at her as she walked up the stairs, looked her up and down from head to toe, addressed her as "Hey Sweetie," and tried to engage in a conversation with her, referring to her as "baby" and "good looking." She asserts that she introduced herself as the HR Director and told him not to catcall her. She submits that she reported the incident to Hodge and cites deposition testimony in which Hodge testified that Bowie brought up an incident involving Martin saying she was beautiful and nice, but Hodge did not understand her to be making a verbal complaint. He further testified that Bowie did not submit a written complaint. Bowie also submits that she was later told that Martin was a protected employee of Chief of Investigations Laughlin.

Considering the undisputed facts, there is no way to conclude that this sole incident involving Martin was related to the other harassment by Hodge upon which Bowie bases her hostile work environment claims. Bowie does not claim she experienced a single subsequent instance of harassment by Martin. She does not allege that she experienced any other instances of catcalling by any other co-worker. To the extent she reported the incident, she does not allege that she ever subsequently reported experiencing sexual harassment without her supervisors acting.

---

[52] Further, the catcalling incident alone could not establish the type of severe or pervasive harassment that creates an abusive environment as required to establish a hostile work environment claim. See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986); Weller v. Citation Oil & Gas Corp., 84 F.3d 191, 194 (5th Cir. 1996).

Instead, the focus of her hostile work environment claim is that her supervisor, Hodge, touched or rubbed her legs, said sexually explicit things, repeatedly brushed against her breasts with his body and hands, and that on two occasions he touched her inappropriately during or following dinner, including trying to kiss her and insert his fingers into her vagina. Bowie's version of the facts alleged against Martin demonstrate the opposite situation presented by the plaintiff in Stewart, where the pre- and post- limitation acts of harassment were of the *same type* and were perpetrated by the *same manager*. See 586 F.3d at 329. The court finds that because the single incident involving Martin is not related to the other sexual harassment that Bowie claims to have experienced by Hodge, her claims arising out of the catcalling incident with Martin must be dismissed as untimely.

   3. *Exhaustion of Administrative Remedies*

"It is well-settled that courts have no jurisdiction to consider Title VII claims as to which the aggrieved party has not exhausted administrative remedies." Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex., 40 F.3d 698, 711 (5th Cir. 1994). Thus, "[t]he scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Carey v. State of Louisiana, No. CIV.A. 00-2657, 2001 WL 1548962, at *5 (E.D. La. Dec. 5, 2001) (quoting Thomas v. Texas Dep't of Criminal Justice, 220 F.3d 389, 395 (5th Cir. 2000)). In light of the remedial purposes underlying Title VII, courts "construe employment discrimination charges with the 'utmost liberality,' bearing in mind that such charges are generally prepared by laymen untutored in the rules of pleading." Price v. Sw. Bell Tel. Co., 687 F.2d 74, 78 (5th Cir. 1982).

A claim alleging one theory of discrimination must be dismissed where the EEOC charge only alleged a different theory of discrimination. Thomas v. Texas Dep't of Crim. Just., 220 F.3d

11

389, 395 (5th Cir. 2000) (reversing the district court's ruling allow plaintiff to assert a race discrimination claim when the EEOC charge had only alleged a gender discrimination claim). For example, where an employee's EEOC charge alleged discrimination on the basis of race and national origin and failed to mention any discrete sexually discriminatory acts or any pattern of discriminatory acts, a court has found that she failed to exhaust her administrative remedies as to the hostile work environment, retaliation, and sex discrimination claims asserted in her lawsuit. Cargo v. Kansas City S., No. CIV.A. 05-2010, 2009 WL 3010824, at *4 (W.D. La. Sept. 16, 2009). Similarly, where a plaintiff's EEOC charge asserted that she had been discriminated against because of her sex but did not allege any facts to support a claim for sexual harassment or retaliation for reporting sexual harassment, the court found she had failed to exhaust her administrative remedies as to her claim of sexual harassment and retaliation for complaining of such harassment. Ellzey v. Cath. Charities Archdiocese of New Orleans, 833 F. Supp. 2d 595, 602 (E.D. La. 2011).

Even where the theory of discrimination alleged in the complaint was the same as alleged in the EEOC charge, a plaintiff may not have exhausted her administrative remedies as to new and unrelated incidents alleged in the complaint. For example, in Carey, the employee's EEOC charge described only his receipt of a memo regarding a policy requiring employees not to listen to radios without earphones or headsets; that he was told the policy would apply to all employees with no exceptions; that his request for an exception was denied; and that he believed he had been discriminated against because of his race, sex, and in retaliation for the filing of a State Civil Service Commission Complaint in 1999. 2001 WL 1548962, at *5. He later filed suit alleging that he had been denied promotions, equal pay, and compensation because of his race and sex. Id. at *2. The court held that the employee had not exhausted his administrative remedies as to claims

12

arising out of certain grievances he had filed with the Department of Health and Hospitals concerning alleged incidents where white females were promoted higher than him and/or paid more than him and a memorandum he filed complaining that he needed additional help but female managers were fully staffed. Id. at *6. The court concluded that the only claims that could reasonably be expected to grow out of his EEOC charge were his complaint regarding the radio policy and his complaint that he was retaliated against for filing the Civil Service Commission complaint. Id.

Here, Bowie's EEOC charge includes only one allegation of sexual harassment against Hodge: that on a weekly basis, he brushed his body against hers if she was seated or walking. Her present complaint goes much further, alleging that Hodge said sexually explicit things to her, that he touched her inappropriately without her consent while at dinner at Landry's,[53] that he tried to kiss her and insert his finger into her vagina after dinner at Santa Fe Restaurant, and told her not to get involved with employees reporting sexual harassment incidents at OPSO. The Sheriff concedes that Bowie's attorney submitted a position statement to the EEOC that asserted additional claims against Hodge, but points out that he never received this statement and was never put on notice of the additional claims.

The Sheriff argues that Bowie failed to exhaust her administrative remedies as to the more serious allegations of sexual harassment against Hodge. The court disagrees. Although these additional incidents are not alleged in the particulars of her EEOC charge, the court finds that these incidents would reasonably have been expected to grow out of the charge of discrimination. This is not a case like Cargo or Ellzey where the EEOC charge alleged one theory of discrimination, the complaint alleged a different type of discrimination, and the EEOC charge included no facts

---

[53] Bowie did not describe the Landry's incident in her deposition.

to support the theory of discrimination alleged solely in the complaint. Nor is this a case like Carey, where the facts alleged in the charge were not remotely related to the claims asserted in the lawsuit. Instead, Bowie's EEOC charge alleges sexual harassment by Hodge and gives an example of Hodge brushing his body against her. Her complaint included additional alleged verbal and physical sexual harassment by Hodge; sexual harassment of the same type as, albeit some more egregious examples than, those alleged in the charge. In investigating Hodge's alleged sexual harassment, the EEOC would likely have uncovered any additional and similar sexual harassment by Hodge.  In contrast, in Carey, the charge alleged sex discrimination and referred only to a policy concerning radio use, while the complaint alleged sex discrimination based on women being promoted higher, being paid more, and receiving better staffing than the plaintiff. In investigating the implementation of the radio policy, the EEOC would not likely have uncovered instances of unequal pay or staffing or grievances other than the one referred to in the charge.

The Sheriff has not cited a case where a plaintiff was prevented from asserting additional instances of sexual harassment by the same supervisor alleged to have sexually harassed the plaintiff merely because those incidents were not raised in the charge. His argument would seem to require that a plaintiff describe every single fact in support of her claim at the time of filing her EEOC charge.  But the law does not impose such an onerous requirement. While there are limits to the liberal construction of a plaintiff's EEOC charge, they do not go this far.[54] Because the EEOC would reasonably have discovered other incidents of sexual harassment by Hodge that had not been specifically alleged in the charge during its investigation of the alleged sexual harassment by Hodge, and indeed, her lawyer provided these very incidents to the EEOC in Bowie's position

---

[54] The court agrees with the Sheriff that it is curious that Bowie chose to mention only the least offensive of the alleged wrongdoing in her EEOC charge. Nonetheless, Bowie was not obligated to list every fact in support of her claim.

statement to assist the EEOC in its investigation, the court finds that Bowie has exhausted her administrative remedies as to these claims.

The Sheriff's argument that Bowie's sexual harassment and hostile work environment claim must be dismissed assumes that the court would consider only the alleged occasional brushing against her body by Hodge.[55] He concedes this would include the alleged bumping into her in the hallway, the massaging, and the sporadic rubbing of her thigh during meetings. The Sheriff argues that this would not be sufficiently severe and pervasive to establish a hostile work environment claim.[56] The court, however, considers all the alleged sexual harassment, including the allegedly unwanted[57] kissing and Hodge's alleged attempt to insert his fingers into Bowie's vagina. Considering the differing accounts of the incidents by Bowie and Hodge, the court cannot find that, as a matter of law, the Sheriff is entitled to summary judgment on this claim.

4. *Retaliation*

Under Title VII,[58] it is an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a). "To establish a *prima facie*

---

[55] The Sheriff describes these as Bowie's "non-exhausted" allegations, however, it appears he intended to state that Bowie had exhausted her administrative remedies as to those allegations in the EEOC charge.

[56] Harassment affects a "term, condition, or privilege" of employment when it is so severe or pervasive that it alters the conditions of employment and "create[s] an abusive working environment." Meritor, 477 U.S. at 67 (quoting Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982)). In determining "whether a hostile work environment existed, a court must consider 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Moore v. United Parcel Serv., Inc., 150 F. App'x 315, 319 (5th Cir. 2005) (quoting Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002)).

[57] The Sheriff also argues that Bowie cannot establish that the alleged sexual harassment was unwelcome and cites to text messages and phone records showing numerous communications initiated by Bowie to Hodge throughout the relevant period. The purported consensual nature of Bowie and Hodge's relationship will be an issue for trial, but at this stage, it remains a disputed issue of fact.

[58] Because "Louisiana's anti-discrimination statute, La. Rev. Stat. Ann. § 23:301 et seq., is 'substantively similar' to Title VII [] and Louisiana courts routinely look to the federal jurisprudence for guidance," the court considers both Bowie's Title VII and LEDL retaliation claim under the same standard. McCoy v. City of Shreveport, 492 F.3d 551, 556 n. 4 (5th Cir. 2007).

case of retaliation, a plaintiff must show that (1) she participated in a . . . protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action." Stewart, 586 F.3d at 331. "Protected activity can consist of either: (1) 'oppos[ing] any practice made an unlawful employment practice by this subchapter' or (2) 'ma[king] a charge, testif[ying], assist [ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under this subchapter.'" E.E.O.C. v. Rite Way Serv., Inc., 819 F.3d 235, 239 (5th Cir. 2016) (quoting 42 U.S.C. §2000e-3(a)) (alteration in original). The Fifth Circuit has "consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." Davis v. Dallas Indep. Sch. Dist., 448 F. App'x 485, 493 (5th Cir. 2011). For example, the Fifth Circuit found that plaintiff had not engaged in a protected activity when she mentioned to the office manager that her supervisor had asked her to go out for a drink on two occasions but there was no evidence "she protested or objected that these invitations were sexual harassment or otherwise unwelcomed." Marquez v. Voicestream Wireless Corp., 115 F. App'x 699, 703 (5th Cir. Nov. 24, 2004). The court of appeals concluded there was no evidence that the plaintiff had reported unlawful activity. Id.; see Nigro v. St. Tammany Par. Hosp., 377 F. Supp. 2d 595, 601 (E.D. La. 2005) (finding that plaintiff's complaints that a physician's comments offended him and that he did not want to listen to the comments anymore did not qualify as protected activity because the complaints did not concern sexual harassment).

"If the plaintiff successfully presents a *prima facie* case, the burden shifts to the employer to provide a 'legitimate, non-retaliatory reason for the adverse employment action.'" Hernandez v. Yellow Transp., Inc., 670 F.3d 644, 657 (5th Cir. 2012) (quoting Long v. Eastfield Coll., 88 F.3d 300, 305 (5th Cir. 1996)). If the defendant presents evidence that supports that it acted

properly, the fact-finder must decide whether retaliation was the but-for cause for the employer's action. Id.

Here, the Sheriff argues that Bowie's retaliation claim must be dismissed because she cannot show that she engaged in protected activity. Even if she could, he argues that her claim fails because she was discharged for a legitimate, non-retaliatory reason. In opposition, Bowie appears to argue that the purported non-retaliatory reason for her termination is just a pretext. She contends that Hodge sought to terminate her because he knew he was sexually harassing her and that it was a matter of time before she would make a formal complaint. She contends that Laughlin participated in the plan to terminate her because he held a grudge against her for not hiring an applicant he favored. With regard to whether she engaged in a protected activity, however, Bowie does not articulate an argument or specify the protected activity.

The court finds that considering the undisputed facts, there is no way to conclude that Bowie engaged in protected activity. To the extent she relies on Hodge's supposed subjective knowledge that he was sexually harassing her, this is not enough. She must have actually reported unlawful activity. She testified that she did not tell anyone in OPSO about the incidents involving Hodge.[59] She testified that although she raised other grievances with the outside monitor, Margo Frasier, she did not complain about the sexual harassment she alleges she experienced.[60] In opposition, she admits she did not make a complaint, alleging she feared making a report at OPSO because there was no one she could really trust.[61]

To the extent Bowie intends to rely on her email to Hodge on the day of her termination voicing her grievances, the correspondence conspicuously does not reference the alleged sexual

---

[59] Tr. of Bowie Depo., Rec. Doc. 41-10, at 92.
[60] Id. at 61-62.
[61] Rec. Doc. 44, at 7.

harassment by Hodge.[62] In her deposition, Bowie agreed that she did not put anything regarding the sexual harassment that she allegedly experienced in the email. In any event, fatal to her claim of retaliation, the email was sent after the decision to terminate had been made: the board's recommendation was sent to Hodge on March 20, 2019, and he informed Laughlin that he accepted it and wished to proceed with termination on the morning of March 22, 2019. While it appears that Bowie sent the email shortly before going to the meeting where she was advised of her termination around 9:30 or 10:00 a.m., the read receipt indicates that Hodge did not receive the email until 11:22 a.m.[63] Bowie does not dispute this.

Because there is no evidence that could support finding that Bowie engaged in a protected activity prior to the decision to terminate her, Bowie's retaliation claim fails and the Sheriff is entitled to summary judgment.

## Conclusion

For the foregoing reasons, the Sheriff's Motion for Summary Judgment (Rec. Doc. 41) is GRANTED in part and DENIED in part:

Bowie's Title VII sexual harassment and hostile work environment claims arising out of the Martin incident are hereby dismissed with prejudice.

Bowie's retaliation claims under Title VII and LEDL are hereby dismissed with prejudice.

---

[62] Bowie's email makes a few vague references to Title VII, such as remarking that "the words you have use[d] violate title 7 amendment," and "I have been treated openly as if women are second class citizens (Cut off in conversations, hollered and screamed at in front of the men in the organization and told all the problems begin with the women in this organization.)." Rec. Doc. 41-13, at 18-22. Additionally, after acknowledging her own mistakes in the workplace she states "if an organization and its leaders through its culture of sexual harassment, poor communication and retaliation will carry out those behaviors on the person put in place to help and protect the employees, what are we doing to the employees?" Id. It is unclear whether Bowie believes she was making a Title VII complaint with the email. Indeed, Bowie does not allege that she suffered disparate treatment or otherwise rely on the incidents referred to in the email for her discrimination claim. Nor does her opposition memorandum invoke the statements in this email as protected activity. However, the Court need not reach the issue of whether this email amounts to protected activity because the email followed the termination, or at the very least, the termination decision.
[63] Rec. Doc. 41-13.

Bowie's Title VII sexual harassment and hostile work environment claim arising out of the alleged sexual harassment by Hodge shall proceed to trial.

New Orleans, Louisiana, this 11th day of January, 2022.

                                                Janis van Meerveld
                                            United States Magistrate Judge